# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

MARICELYS S.,
    Plaintiff,

v.      C.A. No. 18-479WES

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Maricelys S. brings this action on behalf of her daughter, R.M., to challenge a decision of the Commissioner of Social Security denying R.M.'s application for surviving child insurance benefits under the Social Security Act (the "Act"). The case turns on whether R.M. is the child of a deceased wage earner, Roger M. ("the Decedent"). R.M.'s claim was complicated by Plaintiff's marriage to another man throughout the period in issue, although the administrative law judge ("ALJ") was satisfied that Plaintiff's husband was incarcerated, did not have conjugal rights and could not have been R.M.'s father, thereby rebutting the presumption of legitimacy. Nevertheless, finding that "it was not clearly established that [the Decedent] acknowledged in writing that the claimant was his child," Tr. 14 n.3, the ALJ answered in the negative the question whether R.M. was the Decedent's daughter. After that answer became the final decision of the Commissioner, Plaintiff brought her appeal to this Court. For the reasons that follow, I recommend that the matter be remanded for further proceedings.

## I.    Background

### A.    Facts

On April 15, 2015, Plaintiff, acting on behalf of her minor child, R.M., applied for Social Security benefits (child insurance and lump sum death benefits) based on R.M.'s status as the child of the Decedent, a deceased wage earner who had died on March 9, 2015, shortly after he was released from incarceration at the Rhode Island Adult Correctional Institutions ("ACI"). Tr. 26. Plaintiff's older children (twins) were approved for benefits as the children of the Decedent because he had claimed them as dependents on a 2011 tax return, which was procured and reviewed by a District Office representative of the Social Security Administration ("SSA"). Tr. 46. However, R.M. was not born at the time of the filing of the tax return. Tr. 188.

To support R.M.'s claim that the Decedent was her father, Plaintiff presented many handwritten cards and letters, which she claimed the Decedent had mailed to her from the ACI, where he was incarcerated beginning sometime after R.M. was born. Tr. 45, 84-100, 129-85. These cards and letters include repeated references to the Decedent as the loving father of R.M. and to R.M. as the beloved child of the Decedent. E.g., Tr. 127 (listing references). Plaintiff also presented envelopes with postmarks and some with what purports to be an ACI stamp. E.g., Tr. 123-24, 142-43, 171-72, 185. She contends that these establish that the cards and letters were mailed to her from the ACI while the Decedent was confined there. It is not disputed that the handwriting on all the cards, letters and envelopes appears to be the same; all include the liberal and distinctive use of circles and hearts, particularly to dot the letter "i." Plaintiff testified that this handwriting is not hers but is that of the Decedent. Tr. 202, 215. She also submitted an affidavit purporting to be from the Decedent's mother averring that the handwriting on certain "attached papers" is that of her son.[1] Tr. 120-20A. The evidence further establishes that the Decedent was in contemporaneous contact with his mother in that he returned to live with her

---

[1] Based on what is in the record, it appears that the "attached papers" are two envelopes addressed to Plaintiff in handwriting that includes the distinctive circles and hearts. Tr. 121, 123-24.

after his release from the ACI, permitting the inference that she was familiar with her son's handwriting. Tr. 196. The Commissioner does not dispute that the references to R.M. in the cards and letters amount to an unambiguous acknowledgment that the Decedent was R.M.'s father.

In addition to the cards and letters and the averments that they were written by the Decedent, Plaintiff relies on other evidence. First, she proffered an affidavit purporting to be from the Decedent's father averring that his son had three children, including R.M. Tr. 43. However, this affidavit states – incorrectly – that R.M. was born in Pennsylvania and that the Decedent died in Pennsylvania; in addition, it refers to the putative grandfather by a different first name from the name associated with his Social Security number. Tr. 43, 213. Plaintiff's testimony at the ALJ hearing casts further doubt over the putative grandfather's reliability – she said that the grandfather lives in Puerto Rico and has never seen R.M. Tr. 206-07. Additionally, Plaintiff herself could not explain the confusion over the putative grandfather's name because she had such limited contact with him. Tr. 213-14. Second, Plaintiff submitted an email purporting to be from the Decedent's mother stating that R.M. is her grandchild; however, the email is unsigned and sent from an email address bearing no discernable relationship to its putative author. Tr. 55. Third, Plaintiff submitted an unofficial "certificate of birth." Tr. 34-35. However, she acknowledged that she filled it in herself, Tr. 202, and does not dispute the ALJ's failure to credit this document as evidence of the Decedent's relationship with R.M. See Tr. 24 (discounting evidence of birth record because not completed by Decedent and not official birth certificate).

Before this Court, Plaintiff's focus is on the cards and letters that she claims were sent to her by the Decedent from the ACI. She argues that this evidence sustains her burden of

3

establishing that, "in the case of a deceased individual[,] . . . such insured individual . . . had acknowledged in writing that the applicant is his or her son or daughter," which is one of the methods set out in the Act to prove paternity. 42 U.S.C. § 416(h)(3)(C)(i)(I).

B.   **Procedural History**

During the administrative processing of the claim, a District Office SSA representative identified only as "S. Roy" compared a letter proffered by Plaintiff (described as the "love letter")[2] to handwriting on "the religious cards from [the Decedent's] funeral,"[3] to an exemplar of the Decedent's handwriting from his 2011 tax return, and to exemplars from various Social Security filings that the Decedent had made, including a pain questionnaire form and a "827S" form he had submitted. Tr. 44.[4] Based on this comparison, S. Roy concluded that the handwriting on the "love letter," particularly the letter "R" in the signature, is similar to that on the funeral cards, but is not similar to the handwriting on the Decedent's 2011 tax return or on his Social Security forms. Id. Accordingly, S. Roy prepared a brief report and concluded that "the validity of the love letter is called into question."[5] Id. None of the exemplars that S. Roy used to make this comparison are now in the record. While Plaintiff plainly once had access to the original love letter and to the funeral cards, it appears they had been misplaced by the time of

---

[2] At the hearing, the parties advised the Court that the original of the love letter was submitted by Plaintiff and reviewed by the District Office. However, a copy of the original is missing from the record; only the typed English translation is included. Tr. 45.

[3] Mystery cloaks what S. Roy meant by the reference to the "handwriting on . . . religious cards from [the Decedent's] funeral." Tr. 44. Like the love letter, the funeral cards presumably were submitted by Plaintiff but now are missing. Plaintiff confirms in her reply brief that the funeral cards seen by S. Roy are not in the record. ECF No. 21 at 2 n.1.

[4] As noted *infra*, neither the tax return nor the SSA forms used as exemplars of the Decedent's handwriting are in the record.

[5] In this report, S. Roy also questioned the validity of the affidavit from the putative grandfather because of its factual errors and use of a different first name, as well as the reliability of the unofficial birthing center certificate because it was not completed by the Decedent. Tr. 42.

4

the ALJ's hearing so that the ALJ never saw them. It also seems clear that neither the ALJ nor Plaintiff ever had access to the Decedent's 2011 tax return or to the Social Security filings on which S. Roy relied as exemplars of the Decedent's handwriting.

After Plaintiff's claim was denied administratively, she testified at the ALJ's hearing.[6] She said that the Decedent had been present at R.M.'s birth but was not listed on the official birth certificate because, as clarified by her attorney, Plaintiff was married to someone else. Tr. 199-200. Plaintiff denied that she wrote the cards and letters herself or that someone other than the Decedent wrote them at her request. Tr. 201-02. She also described her estrangement from all members of the Decedent's family, including that she did not attend his funeral. Tr. 206-08, 214, 216.

Issued almost four months after the hearing, the ALJ's decision consists of a lengthy exposition quoting from various statutes and regulations, followed by a brief evaluation of the evidence and the rationale for his finding that the Decedent had not "clearly acknowledged . . . in writing" that he was the father of R.M. Tr. 24. Most of the ALJ's analysis is set out in two lengthy paragraphs that are focused on the state law of paternity as adopted in Rhode Island, which is incorporated by reference into the Act by 42 U.S.C. § 416(h)(2)(A). Tr. 23-24. This portion of the decision emphasizes that, under Rhode Island law, paternity generally must be established by clear and convincing evidence, as well as that "the undersigned concludes that the record does not contain **clear and convincing evidence** to establish [that the Decedent was R.M.'s father]." Tr. 23 (emphasis in original). The ALJ also found that the record contained no self-authenticating document competent to prove paternity under state law (such as an official birth certificate). Tr. 24. Plaintiff has not challenged this portion of the ALJ's decision.

---

[6] R.M., only three at the time of the hearing, was not present. Tr. 195.

Next the ALJ's decision discusses the cards and letters submitted by Plaintiff. The ALJ notes that "other documents submitted by the claimant's mother . . . purportedly from [the Decedent] reference at times . . . [R.M.] as his child[] . . ., despite [Plaintiff's] testimony that she never wrote any letter pretending to be the [Decedent] and his mother indicated that several documents were in his handwriting." Id. The ALJ juxtaposes this observation with the S. Roy report, finding that, "there were inconsistencies with respect thereto which call such evidence in question," and, "[t]hese inconsistencies cannot be ignored by the undersigned." Id. The decision does not clarify what are the S. Roy "inconsistencies" that the ALJ deemed dispositive or how any particular "inconsistency" impacted his assessment of Plaintiff's proffer of the cards and letters.

Returning to the applicable law, the ALJ shifted his analysis to the alternative method for establishing paternity in 42 U.S.C. § 416(h)(3)(C)(i)(I): "such insured individual . . . had acknowledged in writing that the applicant is her or her son or daughter." As relevant here, without articulating what he considered to be Plaintiff's burden of proof under § 416(h)(3)(C), the ALJ concluded that "the evidence does not establish that the deceased wage earner . . . ever <u>clearly</u> acknowledged her in writing as discussed above." Tr. 24 (emphasis supplied). Accordingly, the ALJ's ultimate conclusion was that "[R.M.] is not the child of the deceased wage earner . . . pursuant to [§ 416](h)(3)(C) of the Social Security Act as the evidence of record does not establish that the deceased wage earner . . . ever <u>clearly</u> acknowledged [R.M.]in writing" so that she was not entitled to benefits. Tr. 25 (emphasis supplied); <u>see also</u> Tr. 14 n.3 ("it is not <u>clearly</u> established that [the Decedent] acknowledged in writing that the claimant was his child.") (emphasis supplied).

6

Before the Appeals Council, Plaintiff objected to what she contends was the ALJ's erroneous application of the clear and convincing evidence standard, which is applicable under Rhode Island paternity law, but is not applicable to the alternative methods of proof of paternity listed in 42 U.S.C. § 416(h)(3)(C). Plaintiff also challenged the ALJ's reliance on the S. Roy report, arguing that it should have been given no weight because S. Roy's expertise was not revealed and because none of the exemplars that S. Roy used for the handwriting comparisons were placed in the administrative record; nor were they available to be reviewed by the ALJ; nor, as to the exemplars of the Decedent's handwriting, were they accessible to Plaintiff. Tr. 189A-90. Accordingly, she argued that the ALJ had no basis for evaluating the weight to be afforded to the S. Roy report. Tr. 189. Despite these arguments, the Appeals Council denied review.

## II. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71

7

F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996)). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).

### III. Applicable Law and Analysis

The general criteria for entitlement to child's insurance benefits are found under 42 U.S.C. § 402(d)(1), which provides that every "child" of an individual who dies fully or currently insured under the Act is entitled to child's insurance benefits if the child who has applied for such benefits is unmarried, under the age of eighteen, and was dependent upon the insured individual at the time of the insured's death. Parker for Lamon v. Sullivan, 891 F.2d 185, 188 (7th Cir. 1989). Dependency is presumed if the parent is living with or contributing to

8

the support of the child. Id.; 42 U.S.C. § 402(d)(3). If not, then 42 U.S.C. § 416(h) sets out alternative rules for the determination of family status; it serves as a gateway through which all such applicants for insurance benefits as a "child" must pass. Astrue v. Capato ex rel. B.N.C., 566 U.S. 541, 549 (2012). As relevant to this case, the alternative methods for establishing that a child's relationship to a deceased wage earner entitles her to benefits are found in § 416(h)(2) and § 416(h)(3). See Mendoza v. Sec'y of Health & Human Servs., 655 F.2d 10, 12-13 (1st Cir. 1981) (describing alternative criteria for proving paternity pursuant to the Act); 20 C.F.R. § 404.355(a) (regulation describing alternative methods to establish eligibility as insured's natural child). The burden of proving paternity is on the claimant seeking child insurance benefits of a decedent. Mendoza, 655 F.2d at 13.

Under the method adopted in the first alternative, § 416(h)(2)(A) and 20 C.F.R. § 404.355(a)(1), "applicants who would be eligible to inherit intestate personal property from the insured according to the law of the insured's domiciliary state are deemed 'child[ren]' under the Social Security Act." See Bosco ex rel. B.B. v. Astrue, 10-CV-7544 (LTS/MHD), 2013 WL 3358016, at *4 (S.D.N.Y. Feb. 19, 2013), adopted in part by 2014 WL 3357161 (S.D.N.Y. July 3, 2013). In performing the § 416(h)(2)(a) state law analysis, the ALJ properly relied on the law of Rhode Island and correctly found that Rhode Island law provides that, to establish paternity, "the standard that must be met by the plaintiff shall be that of clear and convincing evidence." R.I. Gen. Laws § 15-8-8. As defined by the Rhode Island Supreme Court, clear and convincing evidence means that, "the truth of the facts asserted by the proponent is highly probable." Parker v. Parker, 103 R.I. 435, 442, 238 A.2d 57, 61 (1968).

Alternatively, under the federal law option in 42 U.S.C. § 416(h)(3)(C)(i)(I) and 20 C.F.R. § 404.355(a)(3), an applicant is determined to be the child of the wage earner if the wage

9

earner "had acknowledged in writing that the applicant is his or her son or daughter" before his death. Thomas v. Astrue, 674 F. Supp. 2d 507, 528 (S.D.N.Y. 2009). Applicants who are qualified as children of insured individuals under § 416(h)(3) are "deemed" dependent, even if not living with or receiving support from the parents. Capato, 566 U.S. at 547-49. Because this alternative method is not tethered to state law, Rhode Island's requirement of "clear and convincing evidence" is totally inapplicable. Program Operations Manual System, GN § 00306.100.A. Rather, a claimant's burden under § 416(h)(3) is satisfied by a simple preponderance of evidence and it is error requiring remand if an ALJ "require[s] clear and convincing evidence on the federal alternative." Allen v. Bowen, 663 F. Supp. 471, 473 (N.D. Ill. 1987); see 20 C.F.R. § 404.953(a) ("[ALJ] must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record."). As one court has held, Vigil o/b/o Dominguez v. Barnhart, CIV 01-635 BB/KBM, 2002 WL 35649838 (D.N.M. July 15, 2002), if there is proof by a preponderance of the evidence that the deceased wage earner signed documents acknowledging a child as his, that is sufficient to sustain the claimant's burden. Id. at *6-7; see Low Dog v. Barnhart, 196 F. Supp. 2d 960, 964 (D.S.D. 2002) ("letters constitute, by a preponderance of the evidence, that wage earner acknowledged paternity in writing").

Here the ALJ's decision is at best ambiguous as to whether, when his analysis moved to the federal alternative in § 416(h)(3), he also shifted from the clear and convincing standard he expressly used for the state law analysis pursuant to § 416(h)(2). A fair reading of his words compels the conclusion that he did not. The decision places great emphasis on the clear and convincing standard, but never mentions the preponderance standard. More importantly, pivotal to the ALJ's § 461(h)(3) finding – repeated three times in the decision – is that the evidence

"does not establish that the deceased wage earner . . . ever <u>clearly</u> acknowledged her in writing. Tr. 14 n.3, 24-25 (emphasis supplied). The requirement that the acknowledgement must be "clear" is not found in the statute; accordingly, these three statements of the finding must reflect that the ALJ was importing the clear and convincing standard from Rhode Island law, thereby imposing on Plaintiff the additional burden to produce evidence that is "clear." As in <u>Allen</u>, 663 F. Supp. at 473, this is error requiring remand.

The ALJ's decision is also tainted by several other troubling errors.

Most significant is the ALJ's reliance on the S. Roy report as substantial evidence despite his failure first to consider what weight to afford it and despite the lack of evidence to use in assessing its probative value, particularly where none of what S. Roy lists in the report is now in the record. This legal error is significant. See <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1156 (2019) (upon challenge by claimant, consideration of what expert relied on to support opinion goes to the weight it may be afforded). It flies in the face of the ALJ's duty to ensure that the administrative record is fully and fairly developed. <u>See</u> HALLEX I-2-6-56 (citing 20 C.F.R. § 404.1512). It disregards the bedrock principle that an ALJ must base the decision on "evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 404.951; <u>see</u> 20 C.F.R. § 404.951(b) ("All evidence upon which the [ALJ] relies for the decision must be contained in the record, either directly or by appropriate reference."). It is not excused by the well-settled principle that an ALJ may rely on opinions presented as hearsay. While the Commissioner asks the Court to consider <u>Richardson v. Perales</u>, 402 U.S. 389 (1971), that case does not provide an ALJ free rein to accept unsupported, unexplained hearsay opinions – to the contrary, <u>Richardson</u> holds that "a written report by a licensed physician <u>who has examined the claimant and who sets forth in his report his medical findings in his area of competence</u> may be received as evidence in

a disability hearing and, despite its hearsay character and an absence of cross-examination, . . . may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant." Id. at 402 (emphasis supplied). Here, contrary to Richardson, the ALJ failed to consider S. Roy's competence for forming an opinion (including whether the S. Roy conclusion is a matter of common sense so that handwriting expertise is not required), none of the underlying evidence on which S. Roy relied was available for the ALJ's review and some of the pivotal evidence was unavailable to Plaintiff. Under these circumstances, it was error to treat the S. Roy report as substantial evidence contradicting Plaintiff's proffer.

As to whether Plaintiff may have access to the Decedent's handwriting exemplars on remand, so far, the ALJ has avoided a serious due process taint due to his and Plaintiff's failure to ask for access.[7] This also augers for a do-over at which Plaintiff may demand her right of access and the ALJ can either afford her access and review the documents himself, or deny access and, in light of the denial, determine what weight, if any, should be afforded to that aspect of the S. Roy report. See Biestek, 139 S. Ct. at 1156 (expert's refusal to provide underlying data goes to weight to be afforded to opinion). There is no question that it would amount to a serious due process deprivation if the ALJ were to gain access to the Decedent's handwriting exemplars and to perform his assessment of the S. Roy report *in camera*, while refusing to grant Plaintiff's request for access to what he is considering. See Goldberg v. Kelly, 397 U.S. 254, 270 (1970) (due process demands that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the

---

[7] There is no issue with the District Office's reliance on SSA and tax records. Indeed, the District Office's review of the Decedent's 2011 tax return resulted in the award of benefits to Plaintiff's older children. The issue is affording the ALJ access to records adverse to R.M. that Plaintiff is barred from seeing due to her lack of a legal relationship to the Decedent. See, e.g., 26 U.S.C. § 6103 (limits on disclosure of tax returns); 20 C.F.R. Part 401 (limits on disclosure of SSA records). Because neither the ALJ nor Plaintiff asked for access, this issue can be developed on remand.

12

Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue").

The final troubling feature of the ALJ's decision is the lack of adverse credibility findings. Yet the ALJ must have discounted Plaintiff's credibility,[8] in that he did not accept her testimony that the cards were written in the Decedent's handwriting and are not forgeries. He also must have discounted the affidavit from the Decedent's mother who verified her son's handwriting. Similarly, he must have disregarded the affidavit from the putative grandfather, perhaps in reliance on the S. Roy evaluation of it and Plaintiff's testimony about it. Instead, the ALJ simply pointed to the S. Roy report, but failed to explain why he credited it over other evidence or which of the inconsistencies raised by S. Roy were determinative. Giblin v. Astrue, No. CIV.A. 09-218, 2010 WL 3811433, at *6 (W.D. Pa. Sept. 22, 2010) (error for ALJ to fail to give reasons for discrediting family witnesses' testimony about decedent's relationship with child). On remand, these questions should be considered and the ALJ's treatment of them must be explained. See Anderson v. Bowen, Civ. A. No. 86-0720, 1986 WL 9500, at *3 (E.D. Pa. Aug, 29, 1986) (remand required in part because ALJ failed to explain why he rejected affidavits of alleged father's friends that stated he was father of child); Fuller v. Schweiker, No. 82-3768, 1983 WL 44256, at *4 (E.D. Pa. Aug. 31, 1983) (remand required because ALJ pointed to several purported deficiencies in evidence relating to paternity, but failed to state which testimony he found not to be credible).

---

[8] Plaintiff's key statements were provided in the form of live testimony during the ALJ hearing so the ALJ was uniquely situated to assess her credibility, yet the decision provides no explanation why her statements were discredited. This alone is enough to require remand. Charpentier v. Colvin, No. CA 12-312 S, 2014 WL 575724, at *13 (D.R.I. Feb. 11, 2014) (remand required when ALJ "reject[ed] all subjective evidence based on the finding that Plaintiff lacks credibility, yet provide[d] no reasons for the finding"); see Cruz v. Astrue, No. CA 11-638M, 2013 WL 795063, at *16-18 (D.R.I. Feb. 12, 2013), adopted, No. CA 11-638-M, 2013 WL 802986 (D.R.I. Mar. 4, 2013) ("ALJ's credibility determination, which is based upon her observation of the plaintiff, evaluation of demeanor, and consideration of how her testimony fit in with the rest of the evidence, is entitled to deference").

13

Before closing, a word is necessary on why I do not adopt Plaintiff's request that the Court remand this case for an award of benefits. There is no question that, in other cases where an ALJ has erroneously discounted writings that unambiguously acknowledge paternity (which is what Plaintiff has presented here) because there is no substantial evidence to support the finding, particularly where other substantial evidence supports a finding of paternity, the courts have not hesitated simply to award benefits. E.g., Jones v. Sullivan, 953 F.2d 1291, 1294-95 (11th Cir. 1992) (matter reversed for award of benefits where undisputed tax form identifies claimant as child and many family members testified, some against interest, to paternity; potentially contrary evidence – birth certificate naming estranged husband – filled in as required by law and not persuasive); Vance v. Heckler, 757 F.2d 1324, 1326-29 (D.C. Cir. 1985) (remand with instructions to award benefits because written acknowledgment of paternity unambiguous, record lacked any support for doubt about author and recipient of letter and no contrary evidence presented); Low Dog, 196 F. Supp. 2d at 963-64 (remand for award of benefits because written acknowledgment corroborated by testimony found by Commissioner to be sincere, by tribal court decree of paternity and by South Dakota birth certificate; no credible contrary evidence); S.H. on behalf of D.L.H. v. Heckler, No. IP 82-1932-C, 1983 WL 44258, at *2 ( S.D. Ind. Nov. 14, 1983) (ALJ's failure to consider birthday card acknowledging paternity, which was confirmed by two witnesses to have been written by deceased wage earner, and no contrary evidence, resulted in order to reverse and order payment of benefits). However, in each of these cases, the court relied not only on an unambiguous acknowledgment but also on significant corroborating proof or on the "utter lack of contrary evidence" undermining the authenticity of the writing. E.g., Vance, 757 F.2d at 1328; S.H., 1983 WL 44258, at *2.

By contrast, this is not a case where the proof of paternity is overwhelming or where the proof is very strong and there is not the potential for contrary evidence. See Seavey, 276 F.3d at 11 (a court may remand for an award of benefits when, "the underlying facts and law are such that the agency has no discretion to act in any manner other than to award . . . benefits"). Rather, here, it appears that the only competent evidence buttressing R.M.'s claim that the Decedent was her father is the bundle of cards and letters acknowledging paternity. As potential rebuttal, the record contains several references establishing the availability of evidence that, if properly made part of the record, considered and weighed on remand, may or may not turn out to be substantial evidence sufficient to support the finding that the cards and letters are not genuine.[9] For starters, as the Commissioner emphasized during the hearing, Plaintiff was the proponent of the troubling affidavit from the putative grandfather; while the ALJ did not mention it as evidence adversely bearing on her credibility, on remand, that could be considered. Second, the handwriting on the original funeral cards may provide a pivotal point of comparison with the handwriting on the cards and letters; properly examined, particularly if done by someone qualified to do so, it might well amount to substantial evidence casting doubt on whether the cards and letters were written by the Decedent. Third, on remand, the ALJ may procure further evidence regarding the foundation for the conclusions in the S. Roy report, including examining S. Roy's credentials and acquiring access to the exemplars of the Decedent's handwriting on which S. Roy relied; this may result in the conclusion that the S. Roy report amounts to substantial evidence that the cards

---

[9] One matter that came up during the hearing is whether, on remand, the ALJ may draw an adverse inference based on the lack of DNA evidence. Based on her post-hearing submission, I agree with Plaintiff's argument that he may not. See Kienutske v. Barnhart, 375 F. Supp. 2d 556, 562-63 (E.D. Mich. 2004) (fact that no DNA testing was done is not substantial evidence). In particular, such an inference is inappropriate because it would run contrary to the better reasoned cases holding that a claimant who qualifies under § 416(h)(3) is not obliged to prove a biological relationship. Patterson v. Bowen, 839 F.2d 221, 224 (4th Cir. 1988); Mack on behalf of Wesley v. Sullivan, 813 F. Supp. 760, 765 (D. Kan. 1993); but see Luke for Luke v. Bowen, 868 F.2d 974, 978 (8th Cir. 1989) (requiring predicate proof of biological relationship).

and letters are forgeries. See White for White v. Johnson, 891 F.2d 293, at *1 (6th Cir. 1989 ) (unpublished disposition) (where handwriting analysis revealed notes were written by claimant's mother, ALJ not required to accept her explanation). This is enough for the Court to exercise its discretion to remand for further proceedings. See Seavey, 276 F.3d at 9 ("whether to remand for proceedings or order payment once an error has been found should be reviewed only for abuse of discretion.").

## IV. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion for Reversal (ECF No. 15) be GRANTED, that the matter be remanded for further proceedings pursuant to Sentence Four, and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 19) be DENIED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 9, 2019